

FILED & JUDGMENT ENTERED

Christine F. Winchester

April 15 2025

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Ashley A. E...*

Ashley Austin Edwards
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## SHELBY DIVISION

In re:

**Carolina Sleep Shoppe, LLC,**

Debtor.

Case No. 24-40057
Chapter 11

## OPINION AND ORDER

**THIS MATTER** comes before the Court upon the Debtor's *Motion to Close Case* (the "Motion"). [D.I. 121]. The Motion asks the Court to close a case initiated under Subchapter V of Chapter 11 of the Bankruptcy Code with a non-consensually confirmed plan under 11 U.S.C. § 1191(b) prior to entry of discharge. Whether to close a case at this juncture is a matter of first impression within this jurisdiction. Following a hearing on the Motion, the Court took this matter under advisement and now renders its opinion. For the reasons set forth below, the Motion is **GRANTED**.

## BACKGROUND

### I. Relevant Background on Subchapter V

It is helpful to understand the context under which Subchapter V was enacted before proceeding to an analysis of the instant case. Subchapter V was created in August 2019 when the president signed the Small Business Reorganization Act of 2019 (the "SBRA") into law. Paul W.

Bonapfel, *A Guide to the Small Business Reorganization Act of 2019*, 93 Am. Bankr. L.J. 571, 574 (2019) (citing Small Business Reorganization Act of 2019, Pub. L. No. 116-54, 133 Stat. 1079 (2019)). The purpose of the SBRA was to "to streamline the process by which small business debtors reorganize and rehabilitate their financial affairs." H.R. Rep. No. 116-171, at 1 (2019). The bill's sponsor in the United States House of Representatives explained that the SBRA allows "debtors 'to file bankruptcy in a timely, cost-effective manner, and hopefully allows them to remain in business[,]' which 'not only benefits the owners, but employees, suppliers, customers, and others who rely on that business.'" *Id.* at 4 (quoting *Unofficial Tr. of Oversight of Bankruptcy Law and Legislative Proposals: Hearing Before the Subcomm. on Antitrust, Commercial, & Admin. Law of the H. Comm. on the Judiciary*, 116th Cong. 27 (2019)).

Subchapter V also "provides incentives and procedures to encourage small business debtors and their creditors to arrive at consensual plans." *See Hearing on Oversight of Bankruptcy Law & Legislative Proposals Before the Subcomm. on Antitrust, Commercial and Admin. Law of the H. Comm. on the Judiciary*, 116th Cong. 2, at *1–2 (Revised Testimony of A. Thomas Small on Behalf of the National Bankruptcy Conference) [hereinafter *Revised Testimony of A. Thomas Small*]. "Small business debtors in subchapter V will want to attain confirmation through a consensual plan to avoid 3 to 5 years of trustee supervision and to receive a discharge upon confirmation." *Id.* at *4.

A bankruptcy case initiated under Subchapter V should move quicker than a typical Chapter 11 case. *See id.* at *5–6 ("Subchapter V cases will move fast and debtors will not languish in chapter 11;" "if a debtor does not believe it can be reorganized on the fast track, or doesn't want the scrutiny of a trustee, the debtor is not compelled to elect to be a small business debtor under subchapter V."). The Bankruptcy Code mandates such speed by requiring Subchapter V debtors to

2

file a plan of reorganization within 90 days of the order for relief and only requires that non-consensual plans last for three to five years. *See* 11 U.S.C. §§ 1189(b), 1191(b)–(c). Critically, the fast pace of these cases allows debtors to "reduce costs" in the administration of a Subchapter V. *See Revised Testimony of A. Thomas Small*, at *5. The Bankruptcy Code further reduces costs by stripping certain requirements that Chapter 11 debtors typically must comply with, such as filing a disclosure statement or having a creditors' committee appointed. *Id.*

## II.   **Procedural History**

The Debtor initiated this case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code on April 8, 2024 (the "Petition"). In the Petition, the Debtor elected to proceed under Subchapter V. The Court appointed James David Nave to act as Subchapter V Trustee on the same day that the Petition was filed. On May 9, 2024, prior to the meeting required by section 1188 of the Bankruptcy Code, the Debtor filed a *Section 1188(c) Plan Status Conference Report* (the "Report"). The Debtor stated in the Report that it expected its plan of reorganization to be confirmed on a consensual basis without "substantial controversy."

## A.   **Subchapter V Plan and Confirmation**

On June 27, 2024, the Debtor filed a proposed plan of reorganization under Subchapter V (the "Plan"). The Plan proposed that (a) there would be five classes of creditors; (b) the Plan would "be funded from revenues generated during the Debtor's post-petition operations," the Debtor's post-confirmation proposed disposable income, and from an "Enabling Loan;" (c) the Debtor or its agent would make distributions under the Plan; and, (d) "[o]n the Confirmation Date, all assets of the Debtor and Debtor in Possession shall vest in the Reorganized Debtor free and clear of any and all Claims, liens, Interests, and other interests, charges and encumbrances except as otherwise expressly provided in this Plan or in the Confirmation Order, but shall remain property of the Estate until closure of the Chapter 11 Case."

3

On June 28, 2024, the Court entered an order (the "Confirmation Hearing Order") setting July 26, 2024, as the hearing date to consider confirmation of the Plan (the "Confirmation Hearing"). Shortly thereafter, the Debtor served its creditors with the Plan, the Confirmation Hearing Order, and a ballot for creditors to vote on the Plan. Only those creditors in classes 1 through 4 of the Plan were entitled to vote on the Plan. However, no creditor returned a ballot, and no one objected to confirmation of the Plan. Notably, counsel =for the United States Small Business Administration (the "SBA"), the Debtor's largest and only secured creditor, appeared at the Confirmation Hearing and indicated that the SBA did not "have an objection to moving forward with this Plan." At the Confirmation Hearing, the Court found that the Plan should be confirmed and subsequently entered an order confirming the Plan under section 1191(b) of the Bankruptcy Code on August 13, 2024 (the "Confirmation Order").[1] Importantly, the Court confirmed the plan under section 1191(b) as non-consensual because, consistent with the statutory requirements, no creditor voted to accept the Plan.[2] Still, the "cramdown" or "non-consensual" confirmation of this Plan pursuant to section 1191(b) was due to creditor apathy, not any affirmative rejection of the Plan.

The Confirmation Order made several important findings, including that (1) "[t]he Debtor timely transmitted the Plan and an appropriate ballot conforming to Official Form No. 314 to its creditors, equity security holders, and all other parties in interest;" (2) "[t]he confirmation hearing was held on due and proper notice to all interested parties;" (3) "[n]o creditors voted to accept or reject the Plan" and that "no objections were filed in opposition to the Plan;" (4) "[a]ll requirements for confirmation of the Plan set forth in 11 U.S.C. § 1129(a) have been satisfied, except for the

---

[1] Plan confirmations that occur under section 1191(b) of the Bankruptcy Code are often referred to as "cramdown" or "non-consensual" confirmations.

[2] Again, as noted herein, none of the creditors filed (1) a ballot to reject the Plan or (2) a Plan objection either.

acceptance by impaired creditors as set forth in Sections 1129(a)(8) and (a)(10);" and (5) "[t]he Plan is nevertheless confirmable pursuant to 11 U.S.C. § 1191(b) . . . ." The Confirmation Order went on to decree that "the Reorganized Debtor will be responsible for all distributions under the Plan and the [Subchapter V] Trustee's duties shall be terminated upon substantial consummation of the Plan."

### B.    Post Confirmation

On October 4, 2024, the Debtor filed a *Notice of Substantial Consummation*, to which no party objected. On November 4, 2024, the Court entered an order granting the Subchapter V Trustee's *First and Final Application for Compensation*, which the trustee had filed just over two months earlier without objection. On December 12, 2024, the Debtor filed a *Chapter 11 Post Confirmation Report*, which provided that the Debtor was "pursuing final claim objections, which should be finalized in December of 2024" and that the Debtor anticipated that "its case will be closed in January of 2025" (the "Post-Confirmation Report"). No one objected to the Post-Confirmation Report. On February 6, 2025, the Debtor's counsel filed its final application for allowance of compensation and reimbursement of expenses, which the Court granted without objection on February 20, 2025.

On March 6, 2025, the Debtor filed a *Final Report and* Ex Parte *Motion for Entry of Final Decree* (the "Final Report"). The Final Report provided that (1) the Debtor had filed the Notice of Substantial Consummation, (2) "[a]ll administrative claims and expenses have been paid in full," and (3) the "Debtor has completed its claims review and orders have been entered on all claim objections." Regarding substantial consummation of the Plan, the Final Report provided that (a) the Debtor was unaware of any valid claims in classes 1 and 3; (b) the Debtor had commenced payments to the sole creditor in class 2 (the SBA); (c) annual distributions to claimholders in class

4, the unsecured creditors, would begin in December 2025; and (d) the equity interests in class 5 would not receive any distribution under the Plan.

### III. <u>Motion and Related Pleadings</u>

On March 10, 2025, the Debtor filed the Motion, seeking entry of an order closing this bankruptcy case pursuant to 11 U.S.C. § 350 and Rule 3022 of the Federal Rules of Bankruptcy Procedure. The Motion provided that

> [t]he United States Bankruptcy Administrator for the Western District of North Carolina [(the "<u>Bankruptcy Administrator</u>")] contacted the [Debtor's counsel] on March 10, 2025, essentially stating that closure of the Debtor's case is inappropriate because the company will not receive its discharge until the conclusion of its five-year term and that, if the company wishes to close its case prior to the entry of discharge, a specific motion separate from that already contained in the Final Report would be necessary.

The Debtor filed the Motion and argued that it should be granted because (1) the requirements set forth under the Bankruptcy Code and Federal Rules of Bankruptcy Procedure were satisfied, (2) the Debtor's plan is straightforward, (3) "[f]urther bureaucratic administration of the Debtor's affairs in this Court is unnecessary and will serve only to unnecessarily increase the Debtor's professional fee costs," and (4) "the Reorganized Debtor can simply move to reopen the case as necessary in order to seek entry of its discharge" at the completion of the Plan period in five years.

On March 17, 2025, the Bankruptcy Administrator filed a response to the Motion urging the Court to deny the Motion or, alternatively, to "clarify certain details not addressed in the Motion" (the "<u>Response</u>"). The Bankruptcy Administrator argued that (1) she was "unaware of costly administrative burdens imposed on subchapter V debtors in this district during the postconfirmation period," particularly given the inactive docket in this case post-Confirmation Hearing and the fact that quarterly fees are not assessed in Subchapter V cases; (2) no Subchapter V cases in this jurisdiction with plans non-consensually confirmed under section 1191(b) of the

Bankruptcy Code have been closed prior to discharge (granted, the Bankrutpcy Administrator conceded that no Subchapter V debtor has ever requested entry of a discharge in this jurisdiction); (3) it was unclear whether the Subchapter V Trustee had been discharged yet; (4) closing the case early "effectively limits the scope of estate assets to the detriment of creditors;" (5) the automatic stay will cease to exist and will cease to protect estate property upon closure of the case; (6) keeping the case open will allow the Bankruptcy Administrator to monitor whether the Debtor has maintained sufficient insurance on property of the estate; (7) closing the case will require creditors to pay a "hefty fee (currently $1,167.00) to reopen the chapter 11 case to request relief from [the] Court if the Debtor defaults under the Plan" and will also require the Debtor to pay the same fee upon reopening to obtain the discharge; and (8) "the drafters of subchapter V envisioned more oversight for cases confirmed under section 1191(b)," which "is impossible when a case is closed."[3]

On March 20, 2025, the Debtor filed a reply to the Response (the "Reply"). The Debtor argues in the Reply that (1) any "blanket rule [requiring] all non-consensually confirmed Subchapter V cases [to] remain open during the entire term of their confirmed plans" is inappropriate because "the Court must consider in each situation whether the bankruptcy estate is 'fully administered' for purposes of Bankruptcy Rule 3022;" (2) there is "no compelling policy reason why a non-consensual Subchapter V case must remain open after confirmation in every instance;" instead, there are policy reasons to support closing cases in many circumstances; (3) closing this case will not deprive creditors of property rights because section 1141(b) of the Bankruptcy Code vests all property of the estate in the Debtor upon confirmation, making this

---

[3] Notably, the Bankruptcy Administrator filed the only objection to the Motion to close this case. No creditor has come forward objecting to the case's closure. Additionally, while the Bankruptcy Administrator raises important concerns regarding the closure of a Subchapter V case in this posture, the Court need not address every argument raised by the parties to decide this Motion.

property available to the creditors in the event of a post-confirmation conversion to Chapter 7 of the Bankruptcy Code; and (4) the Plan's injunction provision provides similar protections to those contained in the automatic stay provisions of section 362 of the Bankruptcy Code.

## IV.    Hearing

On March 21, 2025, the Court conducted a hearing on the Motion (the "Motion Hearing"). Richard S. Wright appeared on behalf of the Debtor. Shelley K. Abel appeared on behalf of herself as the Bankruptcy Administrator. In addition to the arguments provided in the pleadings, Mr. Wright argued that (1) keeping the case open is burdensome to the Debtor, as it strains the relationship with the Debtor's franchisor; (2) the Debtor cannot make certain business decisions without the Court's approval during the pendency of the case, such as whether it can buy a new work vehicle outside of the ordinary course of business; (3) the fixed plan payment will protect creditors' interests and make it clear if there is anything out of the ordinary course; (4) there is no basis to find that the Debtor is any "riskier" just because its plan was non-consensually confirmed, especially because the Plan was non-consensually confirmed due to no creditor voting rather than creditors opposing the Plan; (5) counsel for the SBA appeared at the Confirmation Hearing and did not oppose the Plan; (6) Subchapter V specifically contemplates having the Subchapter V Trustee exit prior to plan completion; (7) sections 1141(b) and 1186 do not conflict; (8) the property of the estate vested in the Debtor and still remains property of the estate, pursuant to the Plan terms; (9) after plan confirmation, debtors are generally much less likely to compensate their bankruptcy attorneys; and (10) keeping the case open requires incurring ongoing administrative costs.

In addition to the arguments in the Response, the Bankruptcy Administrator argued that (1) there has been a uniform policy in this jurisdiction of keeping Subchapter V cases open until plan completion if the plan was confirmed non-consensually under section 1191(b); (2) the extent of

the "burden of bureaucratic administration" that the Debtor invokes is merely an annual insurance

report to the Bankruptcy Administrator; (3) it may have been inappropriate to allow the Subchapter

V Trustee to "exit" the case prior to plan completion, and the Subchapter V Trustee in this case has

expressed a willingness to remain in this case, although he does not see a role for himself; (4) plan

confirmation did not allow property of the estate to vest in the reorganized Debtor because the

property is still property of the estate; (5) sections 1141(b) and 1186 of the Bankruptcy Code

conflict; and (6) substantial consummation has occurred. The Court took the matter under

advisement. The Motion is ripe for adjudication.

## ANALYSIS

The Debtor brought this Motion under section 350 of the Bankruptcy Code and Rule 3022

of the Federal Rules of Bankruptcy Procedure. Under section 350 of the Bankruptcy Code, "After

an estate is fully administered and the court has discharged the trustee, the court shall close the

case." 11 U.S.C. § 350(a). Conversely, "[a] case may be reopened in the court in which such case

was closed to administer assets, to accord relief to the debtor, or for other cause." *Id.* § 350(b).

Rule 3022 provides, "After the estate is fully administered in a Chapter 11 case, the court must, on

its own or on a party in interest's motion, enter a final decree closing the case." Fed. R. Bankr. P.

3022.

Notably, Rule 3022 does not explicitly include the requirement for the trustee to be

discharged in a chapter 11 case before the case is closed. But the Bankruptcy Code "must be read

in conjunction with the Bankruptcy Rules." *See Shirkey v. Leake*, 715 F.2d 859, 863 (4th Cir. 1983);

*see also* 11 Collier on Bankruptcy ¶ TX1.08 (16th ed. 2025) (footnote omitted) ("The Bankruptcy

Code contains substantive bankruptcy law. The Federal Rules of Bankruptcy Procedure and local

court rules of bankruptcy procedure govern practice and procedure under the Bankruptcy Code.

The Rules are to be read along with the substantive provisions of the Bankruptcy Code.").

The federal statute that implements the Federal Rules of Bankruptcy Procedure provides that those "rules shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075. "As a result, any conflict between the Bankruptcy Code and the Bankruptcy Rules must be settled in favor of the Code." *United States v. Chavis (In re Chavis)*, 47 F.3d 818, 822 (6th Cir. 1995); *see Cisneros v. United States (In re Cisneros)*, 994 F.2d 1462, 1465 (9th Cir. 1993). Therefore, reading 11 U.S.C. § 350 in conjunction with Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Court interprets Rule 3022 as implicitly requiring the discharge of a trustee in a chapter 11 case prior to the case being closed. *See In re Gui-Mer-Fe, Inc.*, No. 21-01659 (ESL), 2022 WL 1216270, at *3 (Bankr. D.P.R. Apr. 25, 2022) ("Fed. R. Bankr. P. 3022 implements section 350 . . . .").

Considering these authorities, the Court must grapple with two issues to determine whether to close this case: (1) whether the Court has discharged the Subchapter V Trustee and (2) whether the estate has been fully administered. If the Court finds that both factors have been met, this case must be closed.

## I.    <u>Discharge of the Subchapter V Trustee</u>

As an initial matter, in a Subchapter V case, the "trustee" that is referenced in section 350 of the Bankruptcy Code is the Subchapter V Trustee that is appointed pursuant to section 1183 of the Bankruptcy Code. *See* 11 U.S.C. § 1183(a). The Bankruptcy Code does not define the word "discharge" that is used in section 350 of the Bankruptcy Code. However, the word in that context refers to the discharge of a trustee, which clearly differs from the "discharge" used to refer to the termination of certain debts. Black's Law Dictionary defines the word "discharge" as "[t]o extinguish an obligation" or to "terminate [the] employment of [a] person." DISCHARGE, Black's Law Dictionary (5th ed. 1979).[4]

---

[4] The Court cites to the 1979 edition of Black's Law Dictionary to understand the meaning of the term at the time that the statute was enacted.

A Subchapter V trustee's authority primarily arises out of section 1183 of the Bankruptcy Code, which lists the trustee's duties in subsection (b), including the duty to file a final report. *See* 11 U.S.C. § 1183. Subsection (c) of section 1183 is titled "Termination of Trustee Service" and provides that, "[i]f the plan of the debtor is [consensually] confirmed under section 1191(a) of this title, the service of the trustee in the case shall terminate when the plan has been substantially consummated . . . ." *See id.* § 1183(c)(1). "Substantial consummation" occurs upon the

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
> (C) commencement of distribution under the plan.

*Id.* § 1101(2); *see* 8 Collier on Bankruptcy ¶ 1183.05 n.2 (16th ed. 2025) (citation omitted) ("Substantial consummation typically occurs when the first distribution is made under the plan.").

The Bankruptcy Code does not provide for the termination of a Subchapter V Trustee's service—i.e., the trustee's discharge—if a plan is non-consensually confirmed under section 1191(b) of the Bankruptcy Code. *See In re Lager*, No. 22-30072-MVL11, 2024 WL 3928157, at *2 (Bankr. N.D. Tex. Aug. 23, 2024); 8 Collier on Bankruptcy ¶ 1183.05 (16th ed. 2025). This omission may have been intentional, as the role of the Subchapter V trustee varies widely in non-consensual cases and may require them to continue serving for differing lengths depending on the needs of each case. *See* 8 Collier on Bankruptcy ¶ 1183.05 (16th ed. 2025). For example, following a non-consensual plan confirmation, the Subchapter V Trustee must "make payments to creditors under the plan," "except as otherwise provided in the plan or in the order confirming the plan." 11 U.S.C. § 1194(b).

Courts have generally held that "the determination of whether to discharge a Subchapter V trustee" in a case with a plan non-consensually confirmed under section 1191(b) of the Bankruptcy

Code "is a matter of discretion and should be determined based upon the particular facts and circumstances of each case." *See, e.g., Lager*, 2024 WL 3928157, at *2. One factor to consider when determining whether to discharge a Subchapter V Trustee in that circumstance is "[t]he breadth of the Subchapter V trustee's post-confirmation role." *See id.* at *8. For example, in a case before the Honorable Paul W. Bonapfel, the court ordered that a Subchapter V trustee be discharged following substantial consummation and the filing of the final report because "the Debtor will make plan payments in this case," leaving "nothing [for the Subchapter V trustee] to do after filing the final report, subject to the possible occurrence of future events that would require trustee services." *See In re Florist Atlanta, Inc.*, No. 24-51980-PWB, 2024 WL 3714512, at *3 (Bankr. N.D. Ga. Aug. 7, 2024).

In this case, the reorganized Debtor is responsible for all distributions under the Plan, and the Subchapter V Trustee's duties were set to terminate upon substantial consummation of the Plan, pursuant to the Confirmation Order. Considering that the Debtor filed the Notice of Substantial Consummation on October 4, 2024, and both parties agree that substantial consummation has occurred in this case, the Court finds that the Subchapter V Trustee's duties have been terminated pursuant to the Confirmation Order. This includes any duty to file a final report.[5] Therefore, the Subchapter V Trustee in this case has been discharged pursuant to section 350 of the Bankruptcy

---

[5] The fact that a Subchapter V Trustee may not have to file a final report raises concerns regarding the administration of a bankruptcy case, particularly as it relates to notice of the Subchapter V Trustee's discharge. Although the Court finds that the Subchapter V Trustee in this case was discharged and has no duty to file a final report pursuant to the Confirmation Order, there are procedures that must be followed to clarify that the discharge of the Subchapter V Trustee has occurred. These procedures are discussed below in the section titled "Procedural Requirements."

Code and Rule 3022 of the Federal Rules of Bankruptcy Procedure.[6] Having found that the trustee

has been discharged, the Court must now consider whether the estate has been fully administered.[7]

## II.  **Full Administration of the Estate**

The Bankruptcy Code does not define what it means for an estate to be "fully

administered." Black's Law Dictionary defines the term "fully administered" as follows: "The

English equivalent of the Latin phrase '*plene administravit*'; being a plea by an executor or

administrator that he has completely and legally disposed of all the assets of the estate[] . . . ."

FULLY ADMINISTERED, Black's Law Dictionary (5th ed. 1979). Additionally, one of the

advisory committee's notes to Rule 3022 of the Federal Rules of Bankruptcy Procedure provides

certain "[f]actors that the court should [generally] consider in determining whether the estate has

been fully administered," including

> (1) whether the order confirming the plan has become final, (2) whether deposits
> required by the plan have been distributed, (3) whether the property proposed by
> the plan to be transferred has been transferred, (4) whether the debtor or the
> successor of the debtor under the plan has assumed the business or the management
> of the property dealt with by the plan, (5) whether payments under the plan have
> commenced, and (6) whether all motions, contested matters, and adversary
> proceedings have been finally resolved.

Fed. R. Bankr. P. 3022 advisory committee's note to 1991 amendment (the "Advisory

Committee's Note"). Bankruptcy courts have "flexibility in determining whether an estate is fully

administered" and should engage in a "case-by-case" analysis of "the factors set forth in Rule

3022." *In re Endo Int'l Plc*, 666 B.R. 221, 226 (Bankr. S.D.N.Y. 2024) (quoting *Spierer v.*

---

[6] It may be appropriate for a Subchapter V Trustee to remain in a case following confirmation, even if the Subchapter V Trustee does not have the responsibility of making distributions under the confirmed plan. This may be particularly relevant where an entity, including the Bankruptcy Administrator, believes that additional oversight is necessary for any reason, for example as in the case where creditors do not receive a sum certain amount in distributions. In this case, no party requested that the Subchapter V Trustee remain in the case, and no party objected to the Subchapter V Trustee's discharge. Critically, had the Subchapter V Trustee remained in the case and not been discharged, this case would not have been closed at this juncture.
[7] To be clear, although the Court has found that the Subchapter V Trustee has been discharged, the Court has *not* entered an order discharging the Debtor of any of its debts at this point.

*Federated Dep't Stores, Inc. (In re Federated Dep't Stores, Inc.)*, 43 F. App'x 820, 822 (6th Cir. 2002)). "Although courts should apply and weigh the factors, no one factor is dispositive." *Id.* (citing *In re Union Home & Indus., Inc.*, 375 B.R. 912, 917–18 (B.A.P. 10th Cir 2007)). These factors are not exhaustive either; courts may consider other factors in a case-by-case analysis.

In addition to these factors, the Advisory Committee's Note provides that a "court should not keep [a chapter 11] case open only because of the possibility that the court's jurisdiction may be invoked in the future." Fed. R. Bankr. P. 3022 advisory committee's note to 1991 amendment. Importantly, "[a] final decree closing the case after the estate is fully administered does not deprive the court of jurisdiction to enforce or interpret its own orders and does not prevent the court from reopening the case for cause pursuant to § 350(b) of the Code." *Id.* This may be relevant in cases where a debtor seeks to reopen a case in the future to request entry of a discharge, which the Bankruptcy Code permits. *See* 11 U.S.C. § 350(b) (emphasis added) ("A case may be reopened in the court in which such case was closed to administer assets, *to accord relief to the debtor*, or for other cause.").

The Advisory Committee's Note was written 28 years before the SBRA, which created Subchapter V, was enacted into law in 2019. At the time that the committee's note was written, any non-individual chapter 11 debtor that received a discharge would receive the discharge upon plan confirmation. *See* 11 U.S.C. § 1141(d). However, with the enactment of the SBRA, *all* Subchapter V debtors with plans that are confirmed non-consensually must wait until plan completion before the Court may enter a discharge. *See id.* § 1192. How that distinction affects the relevance of the Advisory Committee's Note and its factors, if at all, is an issue that the Court must address in deciding this Motion.

A.      **"Fully Administered" Prior to Discharge**

With Congress enacting the SBRA in 2019, there is not much precedent to decide whether

a Subchapter V case may be considered "fully administered" prior to entry of discharge. However,

precedent involving traditional chapter 11 cases for individual debtors provides some guidance on

this issue because those debtors do not receive a discharge until "completion of all payments under

the plan," *see* 11 U.S.C. § 1141(d)(5), which is similar to debtors that have plans confirmed non-

consensually in Subchapter V cases. Collier on Bankruptcy succinctly addresses this issue:

> Since the 2005 amendments to the Bankruptcy Code, individual chapter 11 debtors
> have been required to make payments to creditors for as long as five years before
> receiving a discharge. Some courts have interpreted Bankruptcy Rule 3022 to
> require that individual chapter 11 cases remain open until the discharge order is
> entered, reasoning that the case is not fully administered before then. Most courts,
> on the other hand, have consented to entry of a final decree after plan confirmation,
> subject to reopening for entry of the discharge order. The issue is important because
> while the case is closed no quarterly U.S. trustee fees are due, nor must any monthly
> operating reports be filed.
>
> There is less reason to close subchapter V cases expeditiously, as subchapter V
> debtors do not have to pay U.S. Trustee fees and monthly operating reports are not
> required after the effective date of a confirmed plan.

9A Collier on Bankruptcy ¶ 3022.03 (16th ed. 2025) (citations omitted). Again, in the context of

individual debtors in traditional chapter 11 cases, Collier on Bankruptcy recognizes "[t]he fact that

distributions remain to be made in a chapter 11 case does not preclude the case from being closed,

nor does the fact that an individual debtor has not yet received a discharge, which is usually entered

after completion of plan payments." 3 Collier on Bankruptcy ¶ 350.02 (16th ed. 2025) (citations

omitted). In certain situations, this Court allows individual debtors in traditional chapter 11 cases

to close their case prior to entry of discharge and to subsequently move to reopen the case for the

purpose of obtaining a discharge. Bankr. N.C.W.D. R. 4004-2. Because this Court already permits,

pursuant to its Local Rules, certain chapter 11 debtors to close their case prior to entry of discharge,

it follows that the entry of discharge is not a relevant factor in determining whether a bankruptcy

estate has been fully administered. In other words, whether the debtor has received a discharge is not determinative in the analysis of whether assets of the estate have been completely and legally disposed of under section 350(a) of the Bankruptcy Code.

**B.      Application to This Case**

In this case, the factors set forth in the Advisory Committee's Note weigh in favor of finding that the estate has been fully administered. First, the Confirmation Order was entered on August 13, 2024, and has become final. Second, the Plan did not require for any deposits to be distributed. Third, the Plan as confirmed provided that property of the estate vested in the reorganized Debtor upon confirmation of the Plan.[8] Fourth, the Debtor operates the business and manages the property dealt with by the Plan. Fifth, the Debtor has begun making the payments under the Plan. Lastly, other than this Motion and the Final Report, all motions, contested matters, and adversary proceedings have been finally resolved. Thus, here, the Debtor has completely and legally disposed of all the assets of the estate. Therefore, in this case specifically, the estate has been fully administered pursuant to section 350 of the Bankruptcy Code and Rule 3022 of the Federal Rules of Bankruptcy Procedure.

**C.      Practical Considerations**

As has been noted above, there are not generally as many burdens in Subchapter V cases as there are in traditional chapter 11 cases, such as the requirement for the debtor to pay quarterly fees or to file monthly operating reports after the effective date of a confirmed plan. *See* 9A Collier

---

[8] As is noted above, the Bankruptcy Administrator argued in her Response and at the Motion Hearing that the Plan did not allow property of the estate to vest in the reorganized Debtor because the property remains property of the estate until case closure; the Bankruptcy Administrator also argued that sections 1141(b) and 1186 of the Bankruptcy Code conflict as it relates to property of the estate. The Plan provided, "On the Confirmation Date, all assets of the Debtor and Debtor in Possession shall vest in the Reorganized Debtor free and clear of any and all Claims, liens, Interests, and other interests, charges and encumbrances except as otherwise expressly provided in this Plan or in the Confirmation Order, but shall remain property of the Estate until closure of the Chapter 11 Case." To the extent the Bankruptcy Administrator objects to this section of the Plan, that objection was affirmatively overruled in the Confirmation Order. The other arguments made by the Bankruptcy Administrator in this regard need not be addressed to resolve this Motion.

on Bankruptcy ¶ 3022.03 (16th ed. 2025) (citations omitted); *Gui-Mer-Fe, Inc.*, 2022 WL 1216270, at *5. Additionally, there is a substantial fee to reopen a case (as of the date of this opinion and order, the fee to reopen a chapter 11 case is $1,167.00) (the "Reopening Fee"). This Reopening Fee makes it costly for a debtor to reopen a case to receive a discharge and for creditors who seek to reopen a case for cause, such as in the case when the debtor has failed to comply with plan requirements. Thus, practically speaking, for most debtors and creditors, there may not be a strong reason to close a Subchapter V case prior to entry of discharge.

Of course, the Court has discretion when deciding if an estate has been fully administered and is given flexibility when weighing the factors set forth in Rule 3022 as described above. But *if* the Court finds that the estate has been fully administered *and* the trustee has been discharged, these practical concerns do not affect the statutory mandate contained in section 350 of the Bankruptcy Code: The Court *must* close the bankruptcy case and enter a final decree. *See* 11 U.S.C. § 350(a); Fed. R. Bankr. P. 3022. Having now found in this case that the estate has been fully administered and that the Subchapter V Trustee has been discharged, this case will be closed and a final decree entered.

**III.    Procedural Requirements**

Going forward, there is some dispute regarding the appropriate procedure to discharge the trustee and to close a Subchapter V case prior to entry of discharge where the Debtor's plan was non-consensually confirmed under 11 U.S.C. § 1191(b). In a case where a Subchapter V trustee does not have the duty to make distributions under a confirmed plan, following confirmation, the Subchapter V trustee must file a Report of No Distribution as a separate docket entry, for which six such options are currently provided for by the Administrative Office of the United States Courts, and which read as simple docket entries. This filing will enable the Subchapter V Trustee to inform the Court, the Bankruptcy Administrator, and all other parties of the discharge of the

Subchapter V trustee and cannot be accomplished by merely including language in a confirmed plan or in a confirmation order. Through this opinion, the Court directs the Subchapter V Trustee in this case to file a Report of No Distribution.

Additionally, in this case, the Debtor filed the Final Report and then filed the Motion after the Bankruptcy Administrator allegedly objected to the Debtor attempting to close the case through a request in the Final Report. The Court agrees that, for administrative purposes, it is inappropriate to request that a case like this be closed in a final report. Instead, a party in interest must file a motion to close the case that addresses whether the case has been fully administered and if the Subchapter V trustee has been discharged.

## CONCLUSION

For the reasons set forth above, the Court holds that a case initiated under Subchapter V of Chapter 11 of the Bankruptcy Code may be closed prior to entry of discharge where the Debtor's plan was non-consensually confirmed under 11 U.S.C. § 1191(b) if the Court finds the requirements of section 350 of the Bankruptcy Code and Rule 3022 of the Federal Rules of Bankruptcy Procedure have been satisfied. Therefore, the Motion is **GRANTED**, and the Bankruptcy Administrator's objections to the Motion, including those in the Response, are **OVERRULED**. This case shall be and hereby is closed pursuant to 11 U.S.C. § 350(a). The Clerk of Court shall enter a Final Decree closing the case pursuant to Fed. R. Bankr. P. 3022.

**IT IS SO ORDERED.**

**This order has been signed electronically.**          **United States Bankruptcy Court**
**The Judge's signature and Court's seal**
**appear at the top of this order.**